**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Soomekh Oriental Rugs,

Plaintiff,

v.

Target Corp.,
f/k/a Dayton Hudson Corp.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-2570 ADM/AJB

---

Norman J. Baer, Esq., Fruth & Anthony, P.A., Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Michael A. Ponto, Esq., and Jonathan T. Haines, Esq., Faegre & Benson LLP, Minneapolis, Minnesota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

Plaintiff Soomekh Oriental Rugs ("Soomekh") filed a Complaint in Hennepin County District Court, Fourth Judicial District, State of Minnesota. On November 22, 2000, the case was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 [Doc. No. 1]. Removal was based upon diversity jurisdiction, 28 U.S.C. § 1332. Soomekh's Complaint sets forth claims for (1) "Fraud" and (2) "Breach of Fiduciary Duty," alleging damages in excess of $2,000,000. Compl. ¶¶ 10-21. On March 28, 2001, at the William Mitchell College of Law, the undersigned United States District Judge heard Defendant Target Corporation's Motion to Dismiss [Doc. No. 10] pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, Defendant's motion is granted.

FILED APR 27 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. BACKGROUND

Soomekh is a partnership, composed of partners who are citizens of states other than Minnesota, with its principal place of business in Beverly Hills, California. Compl. ¶ 1. Defendant Target Corporation ("Dayton's") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. *Id.* ¶ 2. Dayton's operates department stores under the names Dayton's, Hudson's, and Marshall Field's.[1]

In 1976, Soomekh began operating the oriental rug department in Dayton's department stores. Compl. ¶ 3. Dayton's provided the floor space for the oriental rug department and Soomekh provided the rug inventory. *Id.* Although Soomekh was responsible for hiring, training, and paying the oriental rug department employees, they were deemed to be Dayton's employees. *Id.* Each month, an accounting was performed, according to which both Soomekh and Dayton's shared the profits. *Id.* This rug department relationship was governed by a series of contracts.

After Dayton's acquired the Hudson's department stores in the 1980's, Soomekh agreed to expand the oriental rug business into those stores. *Id.* ¶ 4. When Dayton's acquired the Marshall Field's department stores in the 1990's, Miasian Oriental Rugs (d/b/a Nahigian Brothers) operated the oriental rug department in those stores. Compl. ¶ 5. During 1996 and 1997, Soomekh proposed that the Marshall Field's rug enterprise be consolidated with the

---

[1] Target Corporation plans to put the Marshall Field's name on Dayton's stores in Minnesota, Wisconsin, North Dakota and South Dakota, and on Hudson's stores in Michigan, Indiana and Ohio.

Dayton's and Hudson's departments, and that Soomekh operate the rug departments in all of the stores. *Id.* The Marshall Field's rug department continued to be operated separately.

In Fall 1997, Dayton's proposed a new one year contract with Soomekh concerning the Dayton's and Hudson's rug departments. *Id.* ¶6. At this time, Dayton's allegedly stated that during the proposed one year term, Soomekh, Nahigian Brothers and other rug dealers would have the opportunity to make a competitive proposal for a consolidated operation of the Dayton's, Hudson's, and Marshall Field's rug departments. *Id.* Using the competitive bidding procedure, Dayton's could determine who would operate the consolidated rug departments. Soomekh later discovered that Dayton's did not use a competitive bidding procedure. *Id.* ¶ 8.

Soomekh agreed to the one year contract. Signed on November 7, 1997, the contract was captioned "Department Store Division of Dayton Hudson Corporation Licensed Department Agreement."[2] Ponto Aff., Ex. A. The Licensed Department Agreement was for an unlimited number of automatically renewable one-year terms. *Id.* This Agreement included a cancellation clause, pursuant to which either party had the right to avoid renewal of the contract by providing 60 days written notice:

> This Agreement shall automatically renew for all locations listed on Schedule 1 for successive License Years (as defined in Section 4) unless cancelled or terminated for any or all locations by written notice given by either party to the other sixty (60) days prior to termination.

---

[2] The Agreement is properly considered for this Rule 12 motion. "When considering a motion for judgment on the pleadings . . . the court generally must ignore materials outside the pleadings, but it may consider . . . materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

*Id.* at 4, § 3. This same clause also appeared on the front page of the Agreement, as part of a "Data Sheet," which summarized key provisions of the contract. *Id.* at 1.

The Agreement did not provide for any competitive bidding procedure with regard to a consolidated operation of the stores. The Agreement contained an integration clause, to wit: "This Agreement constitutes the entire understanding between the parties and supersedes any prior agreements between the parties hereto. . . ." *Id.* at 27, § 43. On November 25, 1998, Dayton's gave notice of its intent to cancel the Licensed Department Agreement effective January 31, 1999, thus terminating its business relationship with Soomekh. Compl. ¶ 7. Dayton's did not give Soomekh an opportunity to participate in a competitive bidding process. *Id.* ¶ 8. Dayton's consolidated all of the oriental rug departments under the operation of Nahigian Brothers in the Dayton's, Hudson's, and Marshall Field's stores. *Id.*

## III. DISCUSSION

A judgment on the pleadings is not appropriate unless the moving party has clearly established that no material issue of fact remains to be resolved and it is entitled to judgment as a matter of law. *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters*, 627 F.2d 853, 855 (8th Cir.1980); *accord National Car Rental Sys., Inc. v. Computer Assocs. Int'l., Inc.*, 991 F.2d 426, 428 (8th Cir. 1993). The Court must accept as true all facts pled by the non-moving party, and grant all reasonable inferences from the pleadings in the non-moving party's favor. *Id.* The Court does not, however, "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990); *accord* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 595-97 (1969).

First, Soomekh argues that Dayton's committed fraud at the time the Licensed

Department Agreement was negotiated by making a false promise that it would not terminate the relationship without first holding a competitive bidding process. *See* Compl. ¶¶ 10-16. The parol evidence rule bars the evidence upon which Soomekh's fraud claim is based. The parol evidence rule excludes evidence outside the written contract if the evidence contradicts or varies the plain terms of the contract. *Housing and Redevelopment Auth. v. First Ave. Realty Co.*, 133 N.W.2d 645, 648 (Minn. 1965) (stating that the parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement). The Licensed Department Agreement, which contained an integration clause, contained no provision for a competitive bidding procedure. Dayton's alleged oral promise to hold a competitive bidding procedure contradicts the written contract because it restricts Dayton's rights under the explicit cancellation clause. Under the terms of the Agreement, Dayton's had the right to cancel the contractual relationship without first holding a competitive bidding process. The parol evidence rule bars any evidence to the contrary.

However, Soomekh contends that the fraud exception to the parol evidence rule allows evidence of Dayton's statement that it would not cancel the relationship without a competitive bidding procedure. The exception allows evidence of fraudulent oral representations by one party that induce the other to enter into a written contract. *See Hanson v. Stoerzinger*, 299 N.W.2d 401, 404 n.4 (Minn. 1980) ("[A]lthough parol evidence is generally inadmissible to vary the terms of a written contract, it is admissible to determine whether a contract is void or voidable on grounds of fraud, illegality, accident, or mistake."); *Martin v. Guarantee Reserve*

*Life Ins. Co.*, 155 N.W.2d 744, 748 (Minn. 1968). Evidence of fraud is not admitted to vary or contradict the writing, but serves to establish that the contract has no force or validity. *See Ridgway v. County of Hennepin*, 182 N.W.2d 674, 679 (Minn. 1971)("the parol evidence rule does not exclude evidence offered to invalidate an instrument" because the purpose behind allowing "the parol testimony is not to vary the terms of a written agreement, but rather to demonstrate that there never was a valid contract created."). Here, the fraud exception to the parol evidence rule is inapplicable because Soomekh's claim is essentially an attempt to vary the terms of the Agreement by asserting that Dayton's had no right to cancel unless it first held a competitive bidding procedure. Soomekh is neither claiming the Agreement was unenforceable nor arguing that the Agreement was void. The fraud exception does not apply under these circumstances.

Soomekh also contends that Dayton's failure to follow a process of competitive proposals to determine the operator of the consolidated rug departments constituted a breach of fiduciary duty. *See* Compl. ¶¶ 17-21. The existence of a legal duty is an issue for the court to determine as a matter of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn. 1985). A fiduciary relationship may be created when one party places its confidence in a second party, which obtains superiority and influence over the first party. *Vacinek v. First Nat'l Bank,* 416 N.W.2d 795, 799 (Minn. Ct. App. 1987) (citing *Stark v. Equitable Life Assurance Soc'y,* 285 N.W. 466, 470 (Minn. 1939)). The relationship between the parties can be legal, moral, social, domestic, or personal. *Id.* A fiduciary relationship does not arise when the parties negotiating a contract are dealing at arm's length. *See Shema v. Thorpe Bros.,* 62 N.W.2d 86, 91 (Minn.1953); *Klemme v. Long*, 237 N.W.

882, 884 (Minn. 1931); *Walker v. Patterson*, 208 N.W. 3, 5 (Minn. 1926) (holding that because parties deal with each other at arms length, there is no fiduciary relationship in negotiations for a partnership). If a party should have known that the other party was representing adverse interests, there is no fiduciary duty. *See Work Connection, Inc. v. Berkley Adm'rs.*, No. C9-97-2287, 1998 WL 297512, at *1 (Minn. Ct. App. June 9, 1998).[3] In this case, Soomekh and Dayton's were engaged in a commercial transaction, negotiating a Licensed Department Agreement for the operation of the oriental rug departments at the Dayton's and Hudson's stores. This relationship involved competing business interests. A rug dealer and a retailer were seeking to maximize profits. No fiduciary duty arises in such an arms length negotiation. *See Shema*, 62 N.W.2d at 91. Soomekh's pleadings fail to allege facts supporting the existence of a fiduciary relationship with Dayton's.

Furthermore, even if Soomekh could establish a fiduciary duty, Dayton's did not breach any such duty as a matter of law. Dayton's exercised its contractual right to terminate the business relationship. The Licensed Department Agreement contained a cancellation clause and Dayton's satisfied the requisite notice provision. The contract did not contain a competitive bidding procedure limiting the right to cancel. An integration clause provided that the contract constituted the entire understanding and agreement between the parties. Soomekh cannot impose

---

[3] For the propriety of citing unpublished opinions, see *Anastaoff v. United States,* 223 F.3d 898, 899-905 (8th Cir.) (R. Arnold, J.) (holding that, as a matter of constitutional law, unpublished opinions have precedential effect), *vacated as moot,* 235 F.3d 1054 (8th Cir. 2000) ("The constitutionality of that portion of Rule 28A(i) which says that unpublished opinions have no precedential effect remains an open question in this Circuit."), and Richard S. Arnold, *Unpublished Opinions: A Comment,* 1 J.App. Prac. & Process 219 (1999).

additional contract terms simply by asserting a fiduciary duty.

Accepting as true all facts pled by Soomekh, and granting it the benefit of all reasonable inferences therefrom, its claims for fraud and breach of fiduciary duty fail as a matter of law.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 10] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: April 27, 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*